UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INNA TIKAN and NINA BODNAR,

       Plaintiffs,                    No. 13-12173

v.                                  District Judge Paul D. Borman
                                     Magistrate Judge R. Steven Whalen

ASSET ACCEPTANCE, LLC, ET AL.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

The Plaintiffs brought this case under the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*., and the Michigan Regulation of Collection Practice Act ("MRCPA"), M.C.L. § 445.251, *et seq*. The Plaintiffs accepted the Defendants' offer of judgment, reserving the question of attorney fees for the Court's determination. Before the Court now is Plaintiffs' Motion for Attorney Fees [Doc. #49], in which they seek an award of $62,182.98 in total fees and costs.  The motion has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED IN PART, and that Plaintiffs be awarded   **$58,464.23** in fees and costs.

## I.    FACTS

Plaintiff Inna Tikan filed her original complaint on May 15, 2013 [Doc. #1], and the parties filed a joint discovery plan on August 22, 2013 [Doc. #14]. On January 31, 2014, the Court entered a stipulated order permitting Plaintiff to file an amended complaint [Doc. #30]. However, Plaintiff withdrew her first amended complaint on February 3, 2014, and, with leave of the Court, filed a second amended complaint on

March 18, 2014 [Doc. #39]. This second amended complaint added Nina Bodnar as a Plaintiff, and added the law firm of Fulton, Friedman & Gullace LLP as a Defendant, dropping former Defendant Elizabeth Smith.

On April 2, 2014, Plaintiffs filed a motion to compel interrogatory responses and production of documents [Doc. #40]. The Court set the matter for hearing on May 15, 2014, but Plaintiffs withdrew the motion on April 18, 2014 [Doc. #44]. On August 5, 2014, each Plaintiff accepted the Defendants' Offers of Judgment dated March 21, 2014 [Doc. #47 and #48]. The total of the two offers of judgment was just under $12,000.00. Ms. Tikan's offer of judgment included a provision for "costs and reasonable attorney fees incurred to date in this action." *Defendants' Response* [Doc. #50], Exhibit B.

Along with their motion, Plaintiffs have submitted the declaration of their attorney, Rex Anderson (Exhibit 1), Mr. Anderson's Curriculum Vitae (Exhibit 2), attorney time records (Exhibit 3), and paralegal time records (Exhibit 4).

## II.   LEGAL PRINCIPLES

The FDCPA authorizes the court to award attorney's fee and costs to a prevailing party. *See* 15 U.S.C. § 1692k(a) (3); *Lee v. Thomas & Thomas,* 109 F.3d 302, 306-7 (6th Cir.1997). Attorney fees awarded under this section must be reasonable. As the Supreme Court noted in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), "[t]he most useful starting point for determining the amount of a *reasonable* fee is the number of hours *reasonably* expended on the litigation multiplied by a *reasonable* hourly rate." (Emphasis added). In *Glass v. Secretary of HHS*, 822 F.2d 19, 21 (6th Cir. 1987), the Sixth Circuit, citing *Coulter v. State of Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986), recognized "that the rate-times-hours method of calculation, also known as the 'lodestar' approach, includes most, if not all, of the factors relevant to determining a reasonable attorney's

fee."

The purpose of fee shifting statutes such as the FDCPA is to ensure that plaintiffs whose damages may be relatively small may nevertheless obtain counsel to vindicate their federal rights. *Perdue v. Kenny A.*, 559 U.S. 542, 550 (2010). Thus, "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Id.* at 552. However, "[t]he primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir.1999). *See also Coulter v. State of Tennessee, supra*, 805 F.2d at 149 ("Legislative history speaks of 'fees which are adequate to attract competent counsel, but which do not produce windfalls,'..and cautions against allowing the statute to be used as a 'relief fund for lawyers'")(internal citations to Congressional Record omitted). Or, as the Fifth Circuit put it in *Johnson*, 488 F.2d at 720, "[C]ourts must remember that they do not have a mandate...to make the prevailing counsel rich." The party seeking an award of fees bears the burden of showing that the request is reasonable. *See Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir. 1990). "A request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 438.

Ultimately, the determination of what constitutes a reasonable attorney fee "is a matter that is committed to the sound discretion of a trial judge." *Perdue, supra*, at 558.

### III. DISCUSSION

#### A. Hourly Rate

In determining a reasonable hourly rate, "courts should look to the hourly rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Fuhr v. School Dist. of Hazel Park*, 364 F.3d 753, 762 (6th cir. 2004). However, the court retains broad discretion to determine what constitutes a reasonable hourly rate. *Id.; Wells v. New Cherokee Corp.*, 58 F.3d 233, 239 (6th Cir. 1995).

Attorney Rex C. Anderson seeks compensation at the rate of $350.00 per hour. In support, he submits a declaration detailing his background and experience. He states that he has practiced law for over 20 years, specializing in litigation involving the FDCPA, the Fair Credit Reporting Act, the Truth in Lending Act, the Telephone Consumer Protection Act, the Real Estate Settlement Procedures Act, the Michigan Occupational Code, and the Michigan Consumer Protection Act. *Anderson Declaration*, Plaintiff's Exhibit 1, ¶ 8. In addition, he has submitted the State Bar of Michigan's 2014 Economics of Law Practice Survey (Exhibit 5), as well as the 2010 Survey (Exhibit 6), the Laffey matrix and adjusted Laffey Matrix (Exhibits 14 and 15), and a number of National Law Journal Surveys.

First, a word or two about the so-called Laffey matrix. . "Approved originally in *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354 (D.D.C.1983), *aff'd in part, rev'd in part on other grounds,* 746 F.2d 4 (D.C.Cir.1984), the *Laffey* matrix is an inflation-adjusted grid of hourly rates for lawyers of varying levels of experience in Washington, D.C. *Id.* at 371-75; *see Salazar v. District of Columbia,* 123 F.Supp.2d 8, 13 (D.D.C.2000)." *Prison Legal News v. Schwarzenegger,* 608 F.3d 446, 454 (9th Cir. 2010). In *Prison Legal News*, the Ninth Circuit pointedly criticized the use of the matrix outside

-4-

of Washington, D.C.:

> "But just because the *Laffey* matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away. It is questionable whether the matrix is a reliable measure of rates even in Alexandria, Virginia, just across the river from the nation's capital. *Robinson v. Equifax Info. Servs., LLC,* 560 F.3d 235, 245 (4th Cir.2009); *see also Grissom v. Mills Corp.,* 549 F.3d 313, 323 (4th Cir.2008) (noting that the plaintiff provided "no evidence" that the *Laffey* matrix was "a reliable indicator of the hourly rates of litigation attorneys in Reston, Virginia, a suburb of Washington, D.C."). We thus cannot fault the district court for declining to use the *Laffey* matrix."

Although attorneys in FDCPA and other cases with fee-shifting provisions often rely on the Laffey matrix[1], I agree with the Ninth Circuit that it is of limited value anywhere outside the District of Columbia, much less in the Eastern District of Michigan. *See Hazzard v. Schlee and Stillman*, *LLC*, 2014 WL 117411, *3 (E.D. Mich. 2014)(Whalen, MJ). A more accurate benchmark for determining reasonable hourly rates in this district is the State Bar of Michigan's surveys and the fees awarded in other FDCPA cases in this community.

As to the 2014 Economics of Law Practice Survey, the Defendant quibbles over whether Mr. Anderson should be considered a "collections attorney" or a "consumer attorney." Under the survey, collections attorneys, on average, command a lower hourly rate. But whether or not an FDCPA case is properly classified as a consumer case or a collections case, an attorney in the 75th percentile of skill and experience–and Mr. Anderson qualifies in that regard–would bill at over $350 per hour in either case.[2]

---

[1] And why wouldn't they? Mr. Anderson posits that his Laffey matrix rate would range from $475 to $734 per hour, making his request for $350 per hour seem like a bargain basement rate.

[2] According to the 2014 survey, collections/debtor's attorney in the 75th percentile bills at an average rate of $385 per hour. A 75th percentile consumer attorney bills at an average of $400 per hour.

In other FDCPA cases in the past, I have approved rates of at least $300 per hour for experienced lawyers. *See Shields v. Merchants and Medical Credit Corp., Inc.*, 2011 WL 3566485 (E.D.Mich. 2011); *Hazzard, supra*. More recently, in another FDCPA case in this district, Mr. Anderson was awarded a rate of $350 per hour. *Litt v. Portfolio Recovery Associates, LLC*, 2015 WL 1849267 (E.D. Mich. 2015). Likewise in this case, and in view of the most recent Economics of Law Practice survey, I find that the requested rate of $350 per hour is reasonable.

The rate of $125 per hour for Mr. Anderson's legal assistant is reasonable, and is in line with paralegal rates approved in other cases in this district. *See Ward v. G. Reynold Sims & Assoc., P.C.*, 2014 WL 4798935 (E.D. Mich. 2014)(Steeh, J.)($140 per hour rate approved); *Atallah v. Law Office of Timothy E. Baxter, P.C.*, 2013 WL 20866477 (E.D. Mich. 2013)(Rosen, J.)($140 per hour approved); *Loesel v. City of Frankenmuth*, 2014 WL 3894362 (E.D. Mich. 2014)(Ludington, J.)($125 per hour approved).

### B. Hours Expended

Plaintiff's attorney seeks approval and payment for the following time periods:

-177.4 hours of attorney time expended before the March 21, 2014 offer of judgment, at $350 per hour.

-34.9 hours of attorney time expended after March 21, 2014, but with a reduction from $12,215 (34.9 x $350) to $3,000.

-28 hours of paralegal time expended before March 21, 2014, at $125 per hour.

-Costs in the amount of $4,566.45.

The total of these amounts is $73,156.45. Counsel then proposes an across-the-board discount of 15%, resulting in a final award request of $62,182.98.

### A. Attorney Time Before 3/21/14

Plaintiff's counsels time sheets detail 177.4 hours of attorney time up to the March 21, 2014 offer of judgment. Defendant protests that an experienced attorney should not have to spend 7.5 hours drafting a complaint or 26 hours "drafting the amended complaint and related motions for leave to amend, and for communicating with Defendant's counsel regarding a stipulation for leave to amend." *Defendants' Response*, at 13-14. Defendant argues that many entries billed in .1 hourly increments (which would be 6 minutes) reflect tasks that should take no more than one or two minutes. Defendant also challenge the request for approximately 10 hours of local travel time.

Defendant also notes that "Tikan's attorney worked over 60 hours more than Asset's counsel through March 21, 2014." *Id*. at 16. However, the question is not whether Defendant's counsel or another attorney might have done the work in less time, but whether Mr. Anderson's hours are reasonable. I have reviewed counsel's time sheets, as well as the Court's docket sheet, and I would not characterize this action as a "garden variety" case that could be litigated with minimal effort. A prevailing plaintiff is entitled to a reasonable fee that a reasonably aggressive attorney has earned, not the lowest possible fee. As the Court noted in *Litt v. Portfolio Recovery Associates, LLC*, 2015 WL 1849267, at *6 (E.D. Mich. 2015)(Hluchaniuk, MJ), "The undersigned is not inclined to make judgments about the amount of time an attorney spent preparing a brief, given that the final product may not always reflect the time actually spent on preparation, research, and drafting."

As to the items–mostly emails–billed in .1 hour increments, I agree that some, perhaps most, of these tasks likely consumed less than six minutes. Of course, it is the usual practice in our industry to bill in increments no less than .1 hours. Nevertheless,

counsel has set forth 117 emails, which at .1 hours each would result in $4,095 in fees at $350 per hour. This seems somewhat excessive in relation to the attorney time actually expended. However, I also note that counsel has suggested a 15% across-the-board reduction in his fee request. This will compensate for any overage.

I recommend $62,090.00 in attorney fees for the period before March 21, 2014, subject to a 15% reduction.

### B. Paralegal Time

Legal Assistant Beth Hudson claims 28 hours. Paralegal fees are compensable in a FDCPA case. *Atallah, supra*, at 4. Looking at Ms. Hudson's time sheets, it is apparent that she undertook substantive tasks such as preparing drafts of pleadings, and reviewing and revising discovery requests. However, Defendant is correct that some of her work included clerical or secretarial duties, such as filing documents, sending out electronic notices, and preparing cover letters. This type of work should not be billed under fee-shifting statutes. *Missouri v. Jenkins*, 491 U.S. 274, 288, n.10 (1989). It would be appropriate to deduct 3 hours, leaving 25 hours at $125 per hour, for a total of $3,125.00, subject to a 15% reduction.

### C. Attorney Time After 3/21/14

The offer of judgment, which Plaintiff accepted, clearly extended only to attorney fees expended as of the date of the offer, March 21, 2014. Offers of judgment are interpreted under principles of contract law. *See Whitaker v. Associated Credit Services, Inc.*, 946 F.2d 1222, 1226 (6th Cir. 1991)(courts "apply general contract principles" to offers of judgment). In *Atallah, supra,* the Court addressed the same issue presented in this case:

> "The Court, however, does agree with Defendant in that the Offer of Judgment which Plaintiff accepted unambiguously offered to compensate

>for fees incurred only 'through the date of this offer.' The Offer of Judgment was made on April 20, 2012. Therefore, only fees incurred through that date are compensable." *Id*. at *4.

Plaintiff's request for $3,000 for attorney time spent after March 21, 2014 should be denied.

### D. Costs

Plaintiff sees $4,566.45 in costs. Defendant objects to the $1,960.00 claimed for translation costs that were provided by attorney Albert Valk. Defendant states that Mr. Valk is Ms. Tikan's immigration attorney. The requested rate for translation services is $100 per hour.

Plaintiff's counsel indicates that he needed an interpreter in order to communicate with his client. According to this Court's Bill of Costs Handbook, where, as here, a party did not get prior court approval for translation costs, that party "has the burden of showing that the interpretation or translation services were necessary at the time the services were received." Plaintiff's counsel states that Ms. Tikan is a Ukranian immigrant who is not fluent in English, and that an interpreter was required at her deposition. In fact, Defendant paid for the interpreter. So I will allow that translation services were necessary to at least some extent, although it is unclear whether Ms. Tikan was so deficient in English that her attorney could not communicate with her on at least a basic level. However, I am concerned that the services were provided by Plaintiff's immigration attorney as opposed to a certified interpreter, and Plaintiff has not provided anything to substantiate that $100 per hour is a reasonable rate, or that it is reasonable to bill for 19 or 20 hours of translation time. Balancing the apparent need for some translation services against the ambiguity of Plaintiff's request, it would be appropriate to reduce the claim for translation costs by $1000.00. This results in total costs of $3,566.45, subject to an

additional 15% reduction.

## IV.   CONCLUSION

I recommend that Plaintiff's Motion for Attorney Fees [Doc. #49] be GRANTED as follows:

| | |
|---|---|
| Attorney time: | $62,090.00 |
| Paralegal time: | $3, 125.00 |
| Costs: | $3,566.45 |
| Subtotal: | $68,781.45 |
| 15% reduction: | -$10,317.22 |
| **Total award:** | **$58,464.23** |

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen<br>R. STEVEN WHALEN<br>UNITED STATES MAGISTRATE JUDGE

Dated: February 12, 2016


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 12, 2016, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla<br>Case Manager to the<br>Honorable R. Steven Whalen